# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JERMOND PERRY,

                    Petitioner,                    Case Number: 2:12-CV-11469
                                                             HONORABLE VICTORIA A. ROBERTS

v.

JEFFREY WOODS,

                    Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING CERTIFICATE OF APPEALABILITY IN PART

This matter is before the Court on Petitioner Jermond Perry's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted of two counts of first-degree murder, one count of being a felon in possession of a firearm, and one count of possession of a firearm during the commission of a felony (felony-firearm). Petitioner raises nine claims for habeas corpus relief. Respondent, through the Attorney General's Office, filed an answer in opposition, arguing that certain of Petitioner's claims are procedurally defaulted and that all of the claims lack merit.

The Court finds no basis for habeas corpus relief and denies the petition.

## I.       Background

Petitioner's convictions arise from the shooting deaths of Dennis and Andrea Perry (Petitioner is unrelated to either victim) at their home in the City of Detroit on May 10, 2003. The couple's six-year-old son, James, was present during the shooting. He told a

police officer that armed men stormed into the house, forced his parents by gunpoint into the basement, and that he then heard nearly two-dozen gunshots. Wayne County Assistant Medical Examiner Dr. Francisco Diaz testified that he performed autopsies on both victims. He determined that Dennis Perry sustained twelve gunshot wounds and one shotgun wound. Andrea Perry sustained nine gunshot wounds.

Leonora Jenkins, Petitioner's then-girlfriend, testified that she was at Petitioner's house on the night of May 9, 2003. At some point late in the evening, she, Petitioner, and Thomas Young left the home in one car, and Donte Hamilton and Renesia Burrell left in a different car. Young provided directions to a home on Princeton Street. When they arrived, Petitioner and Young exited the car, each carried a gun. Hamilton also approached the home. Jenkins remained in the car. The three men entered the home and stayed for approximately five to ten minutes. Jenkins testified that she heard gunshots, then saw the three men quickly exit the home. Everyone drove back to Petitioner's house, where Jenkins saw Petitioner, Young, and Hamilton sitting at a table, passing out money.

Jason Lindsey testified that he lived across the street from Petitioner's house and visited the home around midnight on May 9, 2003. Petitioner, Hamilton, Young, Burrell, and Jenkins were at the home when he arrived. Lindsey saw four bags of marijuana on the table and observed that Young carried a shotgun. He heard Young, Hamilton and Petitioner discuss breaking into someone's home earlier in the evening because there was money or drugs in the home. Young said he believed he had been struck in the hand by

one of Petitioner's gunshots. Young also stated that he hoped that the people at the home were dead because they had seen his face. Lindsey testified that Petitioner said he fired his gun and that either Petitioner or Young said they shot the victims in the basement because there were children on the first floor.

Petitioner did not testify in his own defense. A jury convicted him in Wayne County Circuit Court. The court sentenced him to: life in prison for the first-degree murder convictions; three to five years for the felon in possession conviction; and two-years for the felony-firearm conviction.

Petitioner filed a motion for a new trial alleging an improper communication occurred between the officer-in-charge and the jury. Following the testimony of two witnesses at an evidentiary hearing, the trial court denied the motion after finding the witnesses not credible. Petitioner filed a second motion for new trial on the ground that newly discovered evidence from two co-defendants established that he was not involved in the murder. The trial court held an evidentiary hearing. Both co-defendants testified. The trial court denied the motion.

Petitioner filed an appeal of right in the Michigan Court of Appeals raising these claims: (i) police officer engaged in improper *ex parte* communications with the jury; (ii) the prosecutor exercised peremptory challenges to strike three jurors solely on the basis of race; (iii) hearsay testimony was improperly admitted; and (iv) a new trial is warranted because two co-defendants exonerated Petitioner at a post-conviction hearing. The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Perry*, No.

294223, 2011 WL 118809 (Mich. Ct. App. Jan. 13, 2011).

Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal. *People v. Perry*, 490 Mich. (Mich. Sept. 26, 2011).

Petitioner filed a habeas corpus petition raising the same claims raised on direct appeal in the state court. He then filed a motion to amend the petition and to hold the petition in abeyance to exhaust additional claims in state court. The Court granted the motion.

Petitioner filed a motion for relief from judgment in the trial court, raising these claims: (i) insufficient evidence sustained Petitioner's convictions; (ii) the prosecutor committed misconduct; (iii) ineffective assistance of trial counsel; and (iv) ineffective assistance of appellate counsel. The trial court denied the motion. *People v. Perry*, No. 03-11974 (Wayne County Cir. Ct. Feb. 21, 2014). The Michigan Court of Appeals denied Petitioner's application for leave to appeal. *People v. Perry*, No. 322933 (Mich. Ct. App. Sept. 15, 2014). Petitioner sought leave to appeal in the Michigan Supreme Court. The Michigan Supreme Court denied leave to appeal, but remanded to the circuit court to correct the judgment of sentence to reflect only two first-degree murder convictions.[1] *People v. Perry*, 497 Mich. 1023 (Mich. May 27, 2015).

---

[1] Petitioner had been convicted of two counts of first-degree premeditated murder and two counts of first-degree felony murder. In such cases, Michigan law provides that a defendant is to receive only one conviction of first-degree murder, supported by two theories. Petitioner's judgment of sentence incorrectly stated that he had been convicted

Petitioner returned to this Court and asked for the stay to be lifted. The Court granted the request. The petition raises these claims:

I.      The trial judge erred in denying a motion for new trial where testimony at an evidentiary hearing established that the officer in charge engaged in *ex parte* communications with the jury.

II.     The trial court violated Petitioner's federal constitutional right to equal protection and a jury drawn from a cross-section of the community when it denied defendant's *Batson* objection and permitted the prosecutor to strike three black jurors without stating sufficient race-neutral, non-pretextual reasons for his challenges.

III.    An abundance of hearsay was erroneously admitted at trial, which unfairly bolstered the accusations against the defendant and denied him a fair trial.

IV.     Petitioner was denied a fair trial by the admission of damaging hearsay testimony from other individuals who were allegedly involved in the shooting.

V.      Petitioner is entitled to a new trial based on testimony presented at a post-conviction hearing, where codefendants Thomas Young and Donte Hamilton testified that Mr. Perry was not present at the crime scene and that Petitioner did not commit the crimes for which he was convicted.

VI.     There was insufficient evidence to sustain Petitioner's conviction beyond a reasonable doubt.

VII.    Petitioner was denied due process and a fair trial when the prosecutor (a) failed to disclose exculpatory evidence, (b) improperly appealed to the jury's sympathy by repeatedly referring to the crime victims' children in closing statement, (c) mischaracterized evidence and introduced facts not in evidence; (d) vouched for the credibility of Leonora Jenkins and Jason Lindsey and questioned the credibility of Renesia Burrell, (e) improperly injected personal opinion regarding the evidence; and (f) failed to investigate the possibility that prosecution witnesses lied.

of four counts of first-degree murder.

VIII.   Petitioner was denied his constitutional right to the effective assistance of counsel because counsel failed to object to prosecutorial misconduct and failed to call co-defendants Thomas Young and Donte Hamilton as witnesses.

IX.   Petitioner had ineffective assistance of counsel on appeal and is actually innocent.

## II.   Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 408. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e Supreme] Court." *Id.*

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Id.* Indeed, "Section 2254(d) reflects

the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)) (Stevens, J., concurring)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103, 131 S. Ct. at 786–87.

Additionally, a state court's factual determinations are entitled to a presumption of correctness on federal habeas review. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Procedural Default

Respondent argues that several of Petitioner's claims are procedurally defaulted. "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In this case, the Court finds that the interests of judicial

economy are best served by addressing the merits of Petitioner's claims.

### B. *Ex Parte* Communication With Jury

Petitioner's first claim for relief concerns an allegation that improper communications occurred between the officer in charge and the jury.

The trial court held an evidentiary hearing; Nicole Beedle, a friend and former co-worker of Petitioner's, and Jill Baker-Perry, Petitioner's mother, testified. Beedle and Baker-Perry testified that after the jury had been selected but before testimony began, the officer in charge motioned to the jurors who were waiting in a hallway outside the courtroom to gather together. Beedle and Baker-Perry then saw him speak to the jurors but could not hear what he said. The officer then escorted the jurors into the jury room.

The trial court denied the motion for new trial finding the witnesses lacked credibility. On direct appeal, the Michigan Court of Appeals found that the record supported the trial court's holding that the witnesses' accounts were incredible and denied relief. *Perry*, 2011 WL 118809 at *1-*2.

"As a matter of law, clearly established Supreme Court precedent requires that a criminal defendant be afforded the right to confront the evidence and the witnesses against him, and the right to a jury that considers only the evidence presented at trial." *Doan v. Brigano*, 237 F.3d 722, 733 n.7 (6th Cir. 2001) (citations omitted), *overruled on other grounds by Wiggins v. Smith*, 539 U.S. 510 (2003). The exposure of a juror or jury to "extrinsic evidence or other extraneous influence violates a defendant's Sixth Amendment rights, . . . and a state court decision that conflicts with this rule may justify

habeas relief under the standard set forth in the AEDPA." *Fletcher v. McKee*, 355 Fed.

App'x 935, 937 (6th Cir. 2009). The right to an impartial jury imposes on the trial judge

the duty to investigate allegations of external jury influences. *Remmer v. United States*,

347 U.S. 227, 229-230 (1954).

The trial court heard testimony regarding the possibility of an external influence on

the jury and found the witnesses not credible. On habeas corpus review, federal courts

must give "great deference" to state court credibility determinations. *Howell v. Hodge*,

710 F.3d 381, 386 (6th Cir. 2013) (quotation omitted). Since the state court found the

testimony of these witnesses incredible, its decision finding no violation of Petitioner's

right to a fair and impartial jury, was reasonable.

Habeas relief is denied on this claim.

C.     ***Batson* Claim**

Petitioner next says that his rights under *Batson v. Kentucky*, 476 U.S. 79 (1986),

were violated when the prosecutor used three peremptory challenges and the state court

failed to require the prosecutor to state a race-neutral reason for the challenges.

The Equal Protection Clause of the Fourteenth Amendment commands that "no

State shall ... deny to any person within its jurisdiction the equal protection of the law."

U.S. Const. amend. XIV, § 1. This Clause prohibits a prosecutor from using a

peremptory challenge to exclude members of the jury venire because of their race.

*Batson v. Kentucky*, 476 U.S. 79, 89 (1986). In *Batson*, the Supreme Court articulated a

three-step process for evaluating claims when a prosecutor has used peremptory

challenges in a manner violating the Equal Protection Clause. *Id.* at 96-98. First, the court must determine whether the defendant made a *prima facie* showing that the prosecutor exercised a peremptory challenge on the basis of race. *Id.* at 96-97. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror. *Id.* at 97-98. "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006), quoting *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). Third, if a race-neutral explanation is offered, the court must then determine whether the defendant carried the burden to prove purposeful discrimination. *Batson*, 476 U.S. at 98.

In this case, after the jury was selected and outside the presence of the newly-empaneled jury, the trial court asked defense counsel whether he wanted to make a record with respect to the *Batson* issue. Defense counsel responded:

> Your Honor, the only issue is I was challenging the release of Loretta Holley by the prosecutor. She was the third African American. In fact, the third African American female that the prosecutor released.
>
> At that point in time he only had one other individual that he had released, and that was Mr. Mero.
>
> So that's why I'm making a challenge because he had released two other African Americans at the time he released Ms. Holley.

3/8/2004 Tr. at 134, ECF No. 16-2, Pg. ID 481.

In response, the prosecutor stated that numerous factors contributed to his exercise

of a peremptory challenge to excuse Ms. Holley. He noted that she had several police officer relatives and came across as an overly sympathetic person. Ms. Holley characterized herself as a motivational speaker and the prosecutor expressed a dislike for motivational speakers. The prosecutor also explained that Ms. Holley was attending school and her classes began at 4:00 p.m. on Mondays, Wednesdays, and Thursdays. The prosecutor thought the rest of the jury would view him favorably if he respected Ms. Holley's class schedule. *Id.* at 134-35, ECF No. 16-2, Pg. ID 481-82. The trial court held that this satisfied *Batson's* requirement that the prosecutor provide a race-neutral explanation for the strike. *Id.*

The Michigan Court of Appeals found no error in the trial court's denial of the *Batson* challenge. After reciting the relevant constitutional standard, the state court held that the trial court was justified to require the prosecutor to provide an explanation only for the peremptory strike of Ms. Holley and not for the other two female African American prospective jurors because defense counsel only raised a *Batson* challenge as to Ms. Holley. *Perry*, 2011 WL 11809 at *2-*3.

Under AEDPA's deferential standard of review, the Court finds that the state court's decision was not unreasonable. The prosecutor offered an explanation for Ms. Holley's excusal that was race-neutral. The Court discerns no discriminatory intent. Also, because defense counsel specifically limited his objection to the use of a peremptory challenge to excuse Ms. Holley, the court did not err in not requiring the prosecutor to offer an explanation for the challenge to two other prospective jurors.

The state court's decision is neither contrary to, nor an unreasonable application of, Federal law as established in *Batson;* this claim is denied.

## D. Evidentiary Claims

### 1. Victims' Son's Hearsay Statement

Petitioner argues that the trial court violated his right to a fair trial when it allowed police officers Gina Gallow and Anita King to testify as to what the victim's son, James, told them after the shooting. The trial court admitted the testimony under the excited utterance exception to the hearsay rule.[2]

The Michigan Court of Appeals held that the out-of-court statements from James were properly admitted under the excited utterance exception even though the statements were not made immediately following the shooting. *Perry*, 2011 WL 118809 at *3-*4. The court of appeals accorded the trial court's determination that the statements were made under the stress of the event "wide discretion." *Id.* To the extent that Petitioner argues that the admission of this evidence violated Michigan Rules of Evidence, he fails to allege a basis for federal habeas corpus relief. Errors of state law, particularly the alleged improper admission of evidence, do not allege a constitutional violation upon

---

[2] The Sixth Amendment's Confrontation Clause prohibits the admission of testimonial statements of a witness who did not appear at trial unless the witness is unavailable and the defendant previously had an opportunity to conduct cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Petitioner does not challenge the admission of this testimony under the Confrontation Clause (nor did he raise a Confrontation Clause claim in state court). Had he done so, the same harmless error analysis applied to the hearsay violation would make relief unavailable even if the testimony violated the Confrontation Clause. *See Lilly v. Virginia*, 527 U.S. 116, 140 (1999); *Delaware v. Van Arsdall*, 475 U.S. at 681-84 (1986).

which habeas relief may be granted.  *See Estelle v. McGuire*, 502 U.S. 62 (1991).

An evidentiary ruling may support habeas relief where it is "so egregious that it results in a denial of fundamental fairness" and violates the Due Process Clause.  *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).  The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly."  *Dowling v. United States*, 493 U.S. 342, 352 (1990).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000), quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).  Even assuming that the admission of these statements violated the Confrontation Clause, habeas relief may be granted only if a constitutional error had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946).  "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless.  And, the petitioner must win."  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

The Michigan Court of Appeals found that even if the trial court's admission of James's statements were error, any error was harmless.  *Perry*, 2011 WL 118809 at *4, n.5.  James's statements to police did not directly implicate Petitioner.  Officer Gallow testified that James told her that he saw two black men enter his home and lead his

parents by gunpoint into the basement. Officer King testified similarly. In light of the strong evidence against Petitioner, exclusive of James's statements, the record supports the Michigan Court of Appeals' harmless error determination. Habeas relief is denied.

### 2. Statements of Co-defendants

Petitioner also challenges the admission of purported hearsay statements made by two co-defendants Young and Hamilton. He objects to the admission of three statements from Young: (1) Young hoped that the people inside the victims' home were dead; (2) Young was going to take the shotgun home; and (3) Young believed that Petitioner shot Young's hand. Petitioner argues that these two statements made by Hamilton constituted impermissible hearsay: (1) Hamilton stating that "it was a bullshit lick [robbery]" and (2) Hamilton stating that he shot the female victim.

The Michigan Court of Appeals held that all of the statements were properly admitted. The court held that Young's first two statements fell under the then existing state of mind exception to the hearsay rule. *Perry*, 2011 WL 118809 at *4-*5. The Michigan Court of Appeals held that Young's third statement and both of Hamilton's statements were not hearsay because they were not offered to prove the truth of the matter asserted. *Id.*

The Michigan Court of Appeals' finding that three of the five challenged statements were not offered to prove the truth of the matter asserted is supported by the record. Petitioner fails to identify any clearly established Supreme Court precedent establishing the admission of non-testimonial, non-hearsay out-of-court statements

violates due process.  He cannot show that the admission of this testimony was an unreasonable application of Supreme Court precedent.  Likewise, the admission of Young's first two statements, which are non-testimonial hearsay statements, does not contravene any clearly established law enunciated by the United States Supreme Court. Any Confrontation Clause claim is meritless because none of the statements was testimonial in nature.  *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that the Confrontation Clause applies only to testimonial statements).

### E.    Newly-Discovered Evidence

Next, Petitioner claims that the trial court erred in denying his motion for a new trial on the basis of newly-discovered evidence.

In December 2009, Petitioner filed a motion for a new trial based on affidavits from co-defendants Thomas Young and Donte Hamilton, dated October 28, 2008, and July 8, 2009, respectively.  In their affidavits, each man admitted his own participation in the robbery and murders of Dennis and Andrea Perry, and stated that Petitioner was not present in the home.  The trial court held an evidentiary hearing.  They both testified.  The trial court then denied the motion.  It found that neither Young nor Hamilton was credible.  The court said the timing of the affidavits – executed five and six years after the murders –  contributed to their lack of credibility as did the fact that Young and Hamilton were both serving lengthy sentences for the murders and had nothing to lose by testifying in Petitioner's favor.  The court also found that the evidence was not newly-discovered. *See* ECF No. 16-8, Pg. ID 1251-52.

Petitioner's claim that the denial of his motion for new trial was improper under state law is not cognizable on habeas corpus review. *Pudelski v. Wilson*, 576 F.3d 595, 610-11 (6th Cir. 2009) (holding that the petitioner's claim that the "trial court abused its discretion and misapplied Ohio law when denying his motion for new trial based on newly discovered evidence" was "clearly premised on issues of state law," which are "not subject to habeas review"). A federal district court must presume the correctness of state court credibility determinations unless the petitioner rebuts the presumption with clear and convincing evidence. *Gipson v. Haas*, 2018 WL 2251730, *2 (6th Cir. May 16, 2018). Petitioner does not offer clear and convincing evidence to rebut the trial court's finding that Young's and Hamilton's affidavits and their testimony were not credible. In the absence of such evidence, Petitioner has not shown that the trial court's denial of his motion for a new trial was contrary to or an unreasonable application of Supreme Court precedent.

### F.     Sufficiency of the Evidence

In his sixth claim, Petitioner challenges the sufficiency of the evidence. He argues that no evidence was presented to show that he was present at the murder scene or that he aided and abetted the crimes.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). On direct review, review of a sufficiency of the evidence challenge must focus on whether "after viewing the

evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

"Two layers of deference apply to habeas claims challenging evidentiary sufficiency." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010), citing *Brown v. Konteh*, 567 F.3d 191, 204-05 (6th Cir. 2009). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205, citing *Jackson*, 443 U.S. at 319. Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

Under Michigan law, the elements of first-degree felony murder are: (1) the killing of a human being; (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm would be the probable result; (3) while committing, attempting to commit, or assisting in the commission of any of the felonies enumerated in Mich. Comp. Laws § 750.316. *People v. Smith*, 478 Mich. 292, 318-319 (2007). Armed robbery is one of the enumerated felonies. See People v. Akins, 259 Mich.App. 545, 675 N.W.2d 863, 869 (Mich.Ct.App.2003) ( "[A]rmed robbery [ ] is a well-established predicate felony under the felony-murder statute."). The elements of armed robbery are: "(1) an assault, (2) a

18

felonious taking of property from the victim's person or presence, and (3) the defendant must be armed with a weapon described in the statute." *People v. Johnson*, 206 Mich. App. 122, 123, 520 N.W.2d 672, 673 (1994). "To prove felony murder on an aiding and abetting theory, the prosecution must show that the defendant (1) performed acts or gave encouragement that assisted in the commission of the killing of a human being, (2) with intent to kill, to do great bodily harm, or create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of the predicate felony." *Sturges v. Curtin*, 2017 WL 3498465, *1 (6th Cir. Aug. 16, 2017).

The Michigan trial court, although not specifically citing *Jackson*, clearly applied the *Jackson* standard and held that sufficient evidence was presented to sustain Petitioner's convictions. The trial court found that the prosecution presented witnesses who testified that Petitioner and his codefendants committed a robbery, during which Dennis and Andrea Perry were murdered, that Petitioner was involved in the crimes both in the planning and execution phases, and that he was armed, participated in the robbery, and discharged his weapon. The trial court found that, viewing this evidence in the light most favorable to the prosecution, Petitioner's convictions were supported by sufficient evidence. *See* ECF No. 16-22, Pg. ID 1453-56.

Petitioner's argument essentially asks the Court to reweigh the evidence and to come to a different conclusion than that reached by the jury. This is not the Court's role on habeas review. The Court does not "rely simply upon [its] own personal conceptions

of what evidentiary showings would be sufficient to convince [the Court] of the petitioner's guilt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Instead, the Court asks whether the Michigan Court of Appeals "was unreasonable in *its* conclusion that a rational trier of fact could find [Petitioner] guilty beyond a reasonable doubt based upon the evidence presented at trial." *Id.* citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question 'is not whether a federal court believes the state court's determination ... was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"), quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

Petitioner is correct that the trial court erred in stating that "all of the witnesses during trial testified that defendant was armed and took part in the robbery." ECF No. 16-22, Pg. ID 1454. But this error is not dispositive and may not form the basis for habeas corpus relief. The trial court correctly stated later in the opinion that "multiple" witnesses testified in this way. *Id.* at Pg. ID 1455. The record supports this conclusion. Leonora Jenkins testified that Petitioner entered the victims' home while carrying a gun and that he fled the home after Jenkins heard gunshots. She also testified that after Petitioner returned to his home Petitioner and two other men distributed money. Jason Lindsey testified that, after the shooting, Petitioner admitted to firing his gun while inside the home. This evidence was more than sufficient to sustain the convictions.

Habeas relief is denied on this claim.

### G.    Prosecutorial Misconduct

Petitioner raises numerous claims of prosecutorial misconduct. Specifically, he claims the prosecutor committed misconduct by: (i) failing to disclose exculpatory evidence; (ii) improperly appealing to the jury's sympathy by referring to the victim's children; (iii) mischaracterizing evidence and introducing facts not in evidence; (iv) vouching for the credibility of prosecution witnesses and calling defense witness a liar; (v) improperly injecting his personal opinion regarding the evidence; and (vi) failing to investigate the possibility that prosecution witnesses were lying.

The "clearly established Federal law" relevant to a habeas court's review of a prosecutorial misconduct claim is the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). *Parker v. Matthews*, 567 U.S. 37, 45 (2012). In *Darden*, the Supreme Court held that a "prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.*, quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court must ask whether the Michigan Court of Appeals' decision denying Petitioner's prosecutorial misconduct claims "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker*, 567 U.S. at 47, quoting *Harrington*, 562 U.S. at 103.

Petitioner claims that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose that plea agreements entered into by co-defendants Young and Hamilton provided that, if called to testify at Petitioner's trial, Petitioner's co-

defendants Young and Hamilton would invoke their Fifth Amendment right to remain silent. The trial court (the last state court to issue a reasoned opinion regarding this claim) denied this claim without extensive discussion. Despite the lack of a reasoned opinion, the state court's decision is nevertheless entitled to deference under the AEDPA. *Wogenstahl v. Mitchell*, 668 F.3d 307, 327 (6th Cir. 2012), citing *Harrington*, 562 U.S. at 98-99.

In *Brady v. Maryland*, 373 U.S. 83, 87 (1967) the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." To demonstrate a *Brady* violation, (1) "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching;" (2) "that evidence must have been suppressed by the State, either willfully or inadvertently;" and (3) "prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

The record does not support Petitioner's contention that either Young's or Hamilton's plea agreements included a provision requiring them to invoke their Fifth Amendment rights. *See* ECF No. 16-18, Pg. ID 26-30. Instead, the plea agreements simply provided that the co-defendants would not be *required* to testify against Petitioner. *Id.* Even if the plea agreement included such a provision, it is unclear how this would have been favorable to Petitioner. The trial court's decision finding no *Brady* violation is reasonable.

Next, Petitioner argues that the prosecutor improperly appealed to the jury's sympathy in his opening statement when he talked extensively about the victims' children, and in his closing argument when he told the jury that the children were left without a father or a mother. The state court found nothing improper in the prosecutor's arguments.

Prosecutors "must obey the cardinal rule that a prosecutor cannot make statements calculated to incite the passions and prejudices of the jurors." *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006) (internal quotation omitted). A prosecutor does not overstep by appealing to the jurors' sense of justice. *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009). The prosecutor's language was not inflammatory nor does it appear intended to incite passions or prejudices. The fact that children lost parents may have invoked sympathy from the jury, but the prosecutor did not ask the jury to convict on that basis. Also, the trial court instructed the jury to base their decision only on the evidence and the law, not on their sympathies or prejudices. *See Cameron v. Pitcher*, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001) (holding that jury instruction advising jurors they were required to decide facts on basis of properly admitted evidence mitigated prosecutor's civic duty argument). The Court finds that the prosecutor's argument was not improper.

Petitioner argues that the prosecutor mischaracterized the evidence and argued facts not in evidence during opening statement and closing argument. This claim is unsupported by the record. The prosecutor's argument highlights testimony most favorable to the defense and argues that this evidence supports Petitioner's guilt. The

prosecutor asks the jury to make reasonable inferences based upon the evidence presented. None of this is improper.

Petitioner claims that the prosecutor also engaged in misconduct by improperly vouching for the credibility of witnesses Leonora Jenkins and Jason Lindsey, and questioning the credibility of Renesia Burrell. Prosecutors may not vouch for a witness's credibility. Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985).

"[T]he *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48, quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The prosecutor did not imply that he had some special information about these witnesses' credibility. Instead, considered in its entirety, the prosecutor asked the jury to consider the witnesses' motives for testifying and the consistency of their testimony. None of the prosecutor's arguments amounts to vouching for witness testimony.

Petitioner's claim that the prosecutor injected his own personal opinion about

24

Petitioner's guilt is similarly meritless.  The prosecutor's arguments focused on the evidence presented.  The prosecutor argued that the evidence supported a finding of Petitioner's guilt, but did not suggest that the jury return a guilty verdict based upon the prosecutor's personal beliefs.  The state court's rejection of this claim did not violate due process.

Finally, Petitioner argues that the prosecutor committed misconduct by failing to investigate the possibility that witnesses Jenkins, Burrell and Lindsey would lie when they testified at trial.  This claim fails because Petitioner fails to show that any of these witnesses committed perjury or, even assuming they did, that the prosecutor knew or should have known they would do so.

Habeas relief is denied on this claim.

## H.     Ineffective Assistance of Counsel

In his eighth claim, Petitioner argues that habeas relief is warranted because he received ineffective assistance of counsel.  Specifically, he argues that counsel was ineffective for failing to object to numerous instances of misconduct and for failing to investigate and call Thomas Young and Donte Hamilton as witnesses.

The AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court."  *Burt v. Titlow*, 571 U.S. 12, 19 (2013).  The standard for obtaining relief is "'difficult to meet.'"  *White v. Woodall*, 572 U.S. 415, 419 (2014), *quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013).  In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466

U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." Id. at 688. In order to establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

Petitioner argues that counsel was ineffective for failing to object to the prosecutor's misconduct. As already discussed, Petitioner failed to show that the prosecutor engaged in misconduct. Counsel, therefore, was not ineffective for failing to object on this basis.

Petitioner argues that counsel was also ineffective because he did not call co-defendants Young and Hamilton as witnesses. The Michigan Court of Appeals rejected this argument, finding even assuming that Hamilton and Young would have testified at trial their testimony was inherently suspect, which was confirmed by the trial court's

finding that both witnesses lacked credibility. *Perry*, 2011 WL 118809 at *6, n.8. In addition, counsel would have been reasonable to conclude that the risks associated with calling two co-defendants to testify far outweighed the potential benefits. Defense counsel certainly would have had no guarantees that Young and Hamilton would testify in accord with affidavits they executed over four years after the trial. They just as easily could have implicated Petitioner. It would have been a risky proposition indeed. Counsel's decision not to take this risk was reasonable.

Habeas relief is denied on this claim.

## I.     Ineffective Assistance of Appellate Counsel

Petitioner claims that appellate counsel was ineffective because he failed to raise the claims raised in his motion for relief from judgment on direct appeal.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). The Supreme Court held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. "[T]here can be no constitutional deficiency in appellate counsel's failure to raise meritless issues." *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999). None of the

claims Petitioner argues his appellate attorney should have raised on appeal has been shown to have merit. Therefore, counsel was not ineffective in failing to raise them.

**J.    Actual Innocence**

Finally, to the extent that Petitioner asserts an independent claim of actual innocence based upon the affidavits of Young and Hamilton, habeas relief is denied.

Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Id*. In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence. *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not warrant federal habeas relief. *See Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding); *Muntaser v. Bradshaw*, 429 Fed. App'x 515, 521 (6th Cir.

2011) ("[A]n actual innocence claim operates only to excuse a procedural default so that a petitioner may bring an independent constitutional challenge . . .Given that [petitioner] alleges only a free-standing claim to relief on the grounds of actual innocence, his claim is not cognizable . . . and, accordingly, does not serve as a ground for habeas relief.").

Habeas relief is denied.

## IV.     Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation omitted).

Here, jurists of reason could debate the Court's holding regarding Petitioner's *Batson* claim.  Therefore, the Court grants Petitioner a certificate of appealability as to that issue.  The Court finds that reasonable jurists would not debate the Court's conclusions with respect to Petitioner's remaining clams and denies a certificate of appealability on those claims.

## V.      Conclusion

For the reasons stated above, the Court DENIES the petition for a writ of habeas

corpus. The Court GRANTS a certificate of appealability on Petitioner's *Batson* claim

and DENIES a certificate of appealability with respect to the remaining claims.

**SO ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: September 24, 2018

The undersigned certifies that a copy of this document was served on the attorneys of record and Jermond Perry by electronic means or U.S. Mail on September 24, 2018.

s/Linda Vertriest
Deputy Clerk